# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLAND DIVISION

WENDY KEIRSTED, on Behalf of Herself
and All Others Similarly Situated,

  Plaintiff,

  vs.

THE GLAD PRODUCTS COMPANY, a
Delaware Corporation, and THE CLOROX
COMPANY, a Delaware Corporation,

  Defendants.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

     Plaintiff, Wendy Keirsted ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against The Glad Products Company and The Clorox Company ("Defendants").  Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## JURISDICTION AND VENUE

    1. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant.

    2. This Court has personal jurisdiction over Defendants. Defendants have sufficient minimum contacts with the state of Florida and purposefully availed themselves, and continue to avail themselves, to the jurisdiction of Florida through the privilege of conducting its business ventures

in the state of Florida, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

3. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendants do business throughout this district, and Plaintiff made her purchase of Defendants' Glad Recycling Trash Bags in Titusville, Florida from a retailer in this district and her purchased Glad Recycle Trash Bags was delivered to, and used, in this district.

## THE PARTIES

4. Plaintiff Wendy Keirsted is a natural person and a citizen of Brevard County, Florida, residing in Titusville. Plaintiff purchased the Glad Recycling Trash Bags from a local retailer. Prior to her purchase, Plaintiff saw and reviewed Defendants' advertising claims on the packaging and labeling itself, and she made her purchase of the trash bags in reliance thereon. Plaintiff specifically relied upon representations made by Defendant that the Glad Recycling bags ("Products") were suitable for recycling. Plaintiff did not receive the promised benefits or receive the full value of her purchase.

5. Defendant The Glad Products Company is a Delaware corporation headquartered in Oakland, California. Glad maintains its principal place of business at 1221 Broadway, Oakland, CA 94612. Glad was doing business in the State of Florida at all relevant times, including the Class Period. Directly and through its agents, Glad has substantial contacts with and receives substantial benefits and income from and through the State of Florida. Glad and its agents manufactured, promoted, marketed, and sold the Products at stores and retailers throughout Florida and the United States, as well as on the internet. Glad and its agents prepared, authorized, ratified, and/or approved

2

the false and deceptive labeling and statements on the Products' packaging and disseminated them throughout Florida and the United States.

6. Defendant The Clorox Company is a Delaware corporation headquartered in Oakland, California and maintains its principal place of business at 1221Broadway, Oakland, CA 94612.

7. Clorox was doing business in the State of Florida at all relevant times, including the Class Period. Directly and through its agents, The Clorox Company has substantial contacts with and receives substantial benefits and income from and through the State of Florida. The Clorox Company and its agents manufactured, promoted, marketed, and sold the Products at stores and retailers throughout Florida and the United States, as well as on the internet. The Clorox Company and its agents prepared, authorized, ratified, and/or approved the false and deceptive labeling and statements on the Products' packaging and disseminated them throughout Florida and the United States.

8. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTUAL ALLEGATIONS

9. Americans are also more conscious than ever of their environmental impact as consumers.[1] Environmental product claims drive purchase decisions.[2] And most consumers are willing to pay a premium for sustainable products. In PWC's 2019 Global Consumer Insights Survey, 37% of

---

[1] Greg Petro, "Consumers Demand Sustainable Products and Shopping Formats," FORBES (March 11, 2022), https://www.forbes.com/sites/gregpetro/2022/03/11/consumers-demand-sustainableproducts-and-shopping-formats/?sh=54b3af626a06.
[2] Amy Emmert, "The Rise of the Eco-Friendly Consumer," STRATEGY+BUSINESS (July 8, 2021), https://www.strategy-business.com/article/The-rise-of-the-eco-friendly-consumer.

consumers stated that they specifically seek out products with "environmentally friendly packaging."[3]

10. Survey data compiled by The Recycling Partnership and Southwest News Service indicates that consumers are willing to pay, on average, 26% more for sustainable products. The same survey found that approximately 70% of respondents would go out of their way to support companies making strong efforts to be sustainable.[4]

11. To capitalize on this trend in consumer choice, many companies now market and sell sustainable products—in other words, they are "going green."[5] In 2018, products that featured label claims related to recyclability and sustainability accounted for 16.6% of the consumer-packaged goods market and delivered nearly $114 billion in sales.[6]

12. Products that do not biodegrade are harmful to the environment. "Biodegradable" materials are those that can be decomposed by nature, eventually becoming part of the land. Conversely, "non-biodegradable" materials do not break down naturally and can last for millennia after being deposited in landfills and natural habitats. The accumulation of non-biodegradable waste disrupts ecological balance by polluting ecosystems, harming wildlife, and contributing to several other environmental problems.[7]

13. Plastic materials account for a large portion of non-biodegradable waste that negatively impacts the environment. As of 2015, humans had manufactured around 8.3 billion tons of plastic, and around 60% of it is still in existence, deposited somewhere on the planet. A large portion of these plastics come from single-use packaging—in 2015, 145 million metric tons of plastics went into producing packaging, and 141 million tons were discarded in the same year.[8]

---

[3] "It's Time for a Consumer-Centered Metric: Introducing 'Return on Experience," PWC (2019), https://www.pwc.com/cl/es/publicaciones/assets/2019/report.pdf.
[4] "Survey: Americans Prefer Sustainable Companies," THE RECYCLING PARTNERSHIP (May 28, 2020), https://recyclingpartnership.org/americas-prefer-sustainable-companies/.
[5] "Why More and More Companies are Finally Going Green," RTS (February 21, 2022), https://www.rts.com/blog/why-more-and-more-companies-are-finally-going-green/.
[6] Tensie Whelan and Randi Kronthal-Sacco, "Research: Actually Consumers Do Buy Sustainable Products," HARVARD BUSINESS REVIEW (June 19, 2019), https://hbr.org/2019/06/researchactually-consumers-do-buy-sustainable-products.
[7] Kevin Lee, "What Are the Effects of Non-Biodegradable Waste?" SCIENCING (April 23, 2018), https://sciencing.com/styrofoam-biodegradable-22340.html.
[8] Roni Dengler, "Humans Have Made 8.3 Billion Tons of Plastic. Where does it all Go?" PBS (July 19, 2017), https://www.pbs.org/newshour/science/humans-made-8-3-billion-tons-plastic-go.

14. Currently, plastic waste that is not recycled, and that does not end up deposited in landfills or littered, is incinerated. According to estimates, approximately 16% of U.S. plastic waste was incinerated in 2018.  The incineration of plastic waste releases substantial amounts of carbon dioxide into the atmosphere, contributing to climate change and a host of other environmental problems. Additionally, burning plastic releases toxic gases, heavy metals, and carcinogenic particles into the air, destroying the air quality and health of local communities.[9]

15. Recycling must be done properly. According to experts and climate activists, "recycling isn't working in the U.S."[10] One fundamental reason is the contamination of recycling bins with non-recyclable items, including "Recycling" bags like the Products—or any other non-recyclable items. Once contamination occurs, all the otherwise recyclable contents of those bins can no longer be recycled. Contamination occurs when non-recyclable waste, including the Products, is placed into recycling bins, preventing the proper sorting of recyclable goods. Recycling that is contaminated invariably ends up deposited in landfills, washed into the ocean, or polluting our atmosphere. According to Recyclops, about 25% of all recycling is contaminated and thus is deposited in landfills with other non-recyclable waste.[11]

16. While contamination can result from reckless recycling, not all contamination is purposeful. Unfortunately, consumers often attempt to recycle waste that they believe to be recyclable based on a product's false label claims. To ensure proper recycling, it is therefore crucial that companies accurately represent the recyclable (or non-recyclable) nature of their products.

17. To leverage the known consumer demand for sustainable goods, and consumer's willingness to pay more for them, certain trash bag companies, including Defendants, began marketing trash bags claimed to be designed specifically for "Recycling." But the bags are made of the same non-recyclable plastic as "regular" trash bags.

18. State consumer fraud authorities have started to take notice and are investigating claims of recyclability for plastic bags made out of LDPE, the material Defendants use for their "Recycling" bags. Recently, Hefty was sued by the State of Connecticut for consumer fraud, for naming and

---

[9] "Why burning plastic won't solve the plastic crisis" GREENPEACE (July 28, 2022),
https://www.greenpeace.org.uk/news/incineration-burning-plastic-crisis/ (last visited January 13, 2023).
[10] Renee Cho, "Recycling in the U.S. is Broken. How Do We Fix It?" COLUMBIA CLIMATE SCHOOL (March 13, 2020), https://news.climate.columbia.edu/2020/03/13/fix-recycling-america/.
[11] "Understanding Recycling Contamination" RECYCLOPS, https://recyclops.com/understandingrecycling-contamination/ (last visited January 9, 2023).

selling a line of "Recycling" trash bags—because consumers would reasonably, but incorrectly, believe the bags are both recyclable and suitable for municipal use. Defendants here are engaged in the same consumer fraud.

19. It makes sense that consumer fraud authorities are concerned about "Recycling" bags like Glad's. First, these "Recycling" bags are made with plastic materials that are not recyclable anywhere in the Nation. Second, municipalities will not even accept these bags for recycling use unless they have a "clear bag" or "blue bag" program. And most do not. Finally, the false Product name and label trick consumers into believing they can bag recyclables outside of these limited programs; when that happens, the entire bag of recyclables is diverted to landfills or incinerators as regular trash. Consumers who care about the environment are unknowingly contributing to making pollution worse—and paying Glad a premium to do so.

20. Defendants' "Recycling" bags are not made of recyclable plastics. Rather, the Products are made from LDPE plastics, which are not recycled by recycling facilities in the United States due to their low monetary value.

21. The United States used to sell its recyclable waste to China. However, since China stopped purchasing the United States' recycling, there have been significant changes in plastic acceptance policies of the U.S. MRFs due to declines in the demand for and value of collected plastic material.

22. This transition has led to realizations about the economics of recycling, notably that LDPE plastics have a "negligible-to-negative value." When MRFs lose money collecting this low-value plastic, they inevitably stop recycling it.[12] This means that, because they are made from low-value LDPE plastics, recycling bags like the Products are rejected by MRFs and are instead deposited in landfills or incinerated.

23. Thus, even if "Recycling" bags might be recyclable in theory, the Product's labeling is still deceptive. According to the FTC, technical recyclability does not suffice for a recyclability claim if there is no established program available to recycle the product. FTC regulations instruct that, even if a product is made from recyclable material, it should not be marketed as recyclable if "because of its shape, size, or some other attribute, [it] is not accepted in recycling programs." (16 C.F.R. § 260.12).

---

[12] John Hocevar, "Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastics Recyclability," GREEN PEACE (February 18, 2020), https://www.greenpeace.org/usa/wpcontent/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf.

24. A report published by Greenpeace in February 2020 cautioned companies against making recyclability claims in marketing materials or on products other than for PET #1 and HDPE #2 bottles and jugs. The report warned that such representations "are not accurate in the U.S. and expose companies to legal, reputational and financial liability risks," and explained that companies continuing to make these claims "are liable for misrepresentation and need to ensure that the claims are accurate and not deceptive or misleading."[13]

25. Defendants' largest competitor, Hefty, also uses LDPE plastics to manufacture its so-called "Recycling" bag products.

26. On June 13, 2022, the Connecticut Attorney General brought a consumer fraud enforcement action against Reynolds Consumer Products, Inc., the owner/distributor of Hefty® brand Products, based on the labeling and marketing of its "Recycling" bags. The suit alleges that Hefty's bags, despite their name "Recycling," are not, in fact, recyclable and are otherwise incompatible with recycling facilities in Connecticut.[14]

27. As the suit explains, Hefty's "Recycling" bags are not recyclable because they are made from low-value LDPE plastics, just like ordinary trash bags. Announcing the consumer fraud action, the AG's office remarked: "There are no municipal recycling programs anywhere in Connecticut that can accept and recycle these bags and the recyclables they contain. The Office of the Attorney General is unaware of any recycling facility nationwide that welcomes these bags." (Emphasis added).

28. Defendants' same-named "Recycling" bags are made of the same non-recyclable low-value LDPE plastics that are generally incompatible with municipal recycling nationwide. Thus, what the Attorney General of Connecticut said with respect to Hefty applies with equal force to Glad's "Recycling" bags: "These bags are fundamentally unsuitable for their advertised purposes."

29. By selling the Products nationwide with the false name "Recycling," other misrepresentations and accompanying deceptive imagery, Defendants mislead reasonable consumers to believe that the Products are both recyclable and fit for municipal use throughout Florida and the United States. As a result, consumers pay an unwarranted premium for the Products

---

[13] Hocevar, supra.
[14] "Attorney General Tong Sues Reynolds Over Non-Recyclable Hefty 'Recycling' Trash Bags" OFFICE OF THE ATTORNEY GENERAL CONNECTICUT (June 14, 2022), https://portal.ct.gov/AG/Press-Releases/2022-Press-Releases/AG-Tong-Sues-Reynolds-Over-Hefty-Recycling-Bags.

based on their perceived recyclability, reasonably believing that they are making a sustainable choice and a positive environmental impact.

30. Reasonable consumers like Plaintiff are shocked to find out the Products are not recyclable—anywhere—nor suitable for municipal use in the vast majority of municipalities across the nation. Worse, consumers do not realize municipal use of "recycling" bags as advertised can result in all the otherwise recyclable goods they place inside the bags being instead diverted to landfills or incinerated. Consumers are paying a premium for a product they reasonably believe will help the environment, but in reality, it has a net negative impact on recycling nationwide.

31. One of the most common reasons recyclables are considered contaminated and end up in landfills is because they are collected and deposited in plastic bags. Because recyclables must go through a sorting process at recycling plants, virtually all municipalities prohibit placing recyclables in plastic bags of any kind. Not only do the bags prevent the materials inside from being sorted, but they also endanger plant workers who must manually remove bags that get stuck in the sorting machines. For these reasons, bagged recyclables are not actually recycled. Rather, they are rejected outright by MRFs and diverted to landfills or incinerators.

32. Only places with a "clear bag" or "blue bag" program permit municipal use of "recycling" trash bags. "Clear bag" or "blue bag" programs are virtually nonexistent in Florida and throughout the United States.

33. Due to the proliferation of falsely labeled "recycling" bags, like the Products, and the public's general misunderstanding across the nation that bagging recyclables is advisable, cities are spending tax-payer money to counter the false claims and misunderstandings, with "Don't bag your recyclable" ad campaigns. Defendants are contributing to and taking advantage of widespread misunderstanding by consumers that bagging recyclables is OK, even though most everywhere it is not.

34. Consumers are confused and tricked by Glad's "Recycling Bags." A nationwide organization dedicated to recycling named "Recycle by City" warned publicly, using an image of Defendants' Products:

"Don't be fooled: If your city does not accept plastic bags for recycling [as most don't], they won't accept these either. A plastic bag is a plastic bag, no matter what Glad Products calls it." (Emphasis added).



35. Marketing trash bags designed for municipal "recycling" is thus inherently misleading. Consumers who purchase "recycling" bags do so to positively impact the environment by practicing sustainable habits, and they are unaware that municipal use of these bags, in fact, harms the environment and is impeding sustainability goals nationwide.

36. The harm caused by Defendants' deception is multifaceted: it harms consumers by causing them to pay an unwarranted premium for the Products based on deceptive recyclability claims, endangers recycling plant workers who must manually remove the Products from jammed machinery, and ultimately harms the environment by preventing the recycling of materials that would be properly recyclable, if not for use of the Products. As the Attorney General of Connecticut aptly put it: Any recyclable items inside "Recycling" bags end up "tossed on the trash heap." (See Connecticut AG Tong Press Release, supra)

37. Defendants' products are not recyclable. Defendants misleadingly name and otherwise label the Products "Recycling" bags and market them using imagery that reasonable consumers understand to indicate recyclability, even though the Products themselves are not recyclable anywhere in the Nation and in most places, municipal use of the Products contaminates otherwise recyclable waste.

38. The FTC's "Green Guides" state that "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable," and that products should not be marketed as recyclable unless they can be "recovered from the waste stream through an established recycling program". (See 16 C.F.R. § 260.12(a)). The FTC has also declared that where "any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive." (See 16 C.F.R. § 260.12(d) emphases added).

39. The "Recycling" representation, prominently displayed on the Products' label and reinforced by blue "chasing arrows," a symbol universally recognized to indicate recyclability,

causes consumers to reasonably, but incorrectly believe that the Products are recyclable. Nowhere on the Products' label do Defendants acknowledge that their "Recycling" bags are not recyclable, despite their knowledge on this point.

40. Not only does Glad fail to make the same clear, it does the opposite: adding the "chasing arrows" to the product name "Recycling" to further the false notion that the Product is recyclable.

41. Moreover, the declaration appearing directly under the "Recycling" representation — "Designed for Municipal Use"—is deceptive because nearly all recycling programs in Florida and the United States prohibit municipal use of the Products and will reroute recyclables improperly placed in the Products to landfills or incinerators.

42. As the FTC states: "An item that is made from recyclable material, but, because of its shape, size, or some other attribute, is not accepted in recycling programs, should not be marketed as recyclable." Id.

43. It is misleading for Defendants to market the Products as "Recycling" bags because municipal use of the Products as "designed" impedes recycling efforts in most jurisdictions across the United States. By using the Products as advertised, consumers are unknowingly sending nonrecyclable waste (the Products) to MRFs and requiring workers to take extra (potentially dangerous) steps to separate the Products and their contents from other recyclable materials. Municipal use of the Products results in the contamination of other recyclables, prevents proper sorting, violates no-bagging policies, and prevents otherwise recyclable contents of the bags from being recycled at all. Consumers like Plaintiff reasonably infer that "Recycling" Products "Designed for Municipal Use," and on the shelves at their local stores, will be recycled and accepted for use by their recycling programs.

44. In states like Florida, where virtually all municipalities prohibit the bagging of recyclables, the mere act of selling the Products as "Recycling" bags "Designed for Municipal Use" is invariably deceptive. The same is true in all other states. There are only a handful of "blue bag" or "clear bag" programs nationwide, and in some states, zero.

45. Without regard for this limited municipal use, Defendants knowingly distribute the Products nationwide as DESIGNED FOR MUNICIPAL USE including in communities where such use is prohibited – which is almost every community.

46. Under the Green Guides, unqualified recyclability claims are permitted only if they are true for a substantial majority of consumers or communities where the products are sold. (16 C.F.R. §

260.12(b)(1)). Because the "Recycling" bags are not recyclable anywhere, and most municipalities will not accept them for "use" either, Defendants must sufficiently qualify their recyclability claims. Defendants fail to do so.

47. According to the Green Guides, a product may qualify recyclability claims by stating the percentage of consumers or communities to whom the claim will apply. Alternatively, the Guides recommend qualifications that vary in strength depending on how many communities or consumers to whom the claim applies. For example, if a claim applies to less than 60% of consumers where the product is sold, the Guides recommend a statement as follows: "This Product may not be recyclable in your area" or "Recycling facilities for this product may not exist in your area." Critically, where there are only a few communities that support recyclability claims, as is the case here, the Guides instruct a qualification explicitly state so: "This product is recyclable only in a few communities that have appropriate recycling facilities." (See 16 C.F.R. § 260.12(b)(2)) (emphasis added).

48. Under this guidance, the Products' naked instruction to "Please Check Your Local Facilities" is insufficient to avoid consumer deception, as it fails to provide any indication that most facilities and programs will not support the recyclability claims and that in fact, only a few will accept them for use.

49. Over twenty years ago, the FTC specifically called out "please check" language as invariably deceptive where a recyclability claim depends on a program that is not widely available. At that time, the FTC amended its Green Guides to advise that any qualifying "please check" language must also note affirmatively that a program is "limited" or may not be available, where that is the case, as it is here. No such language appears on the Products' label, the Products' website, or anywhere else.

50. Green Guide Example 4 is instructive. In that example, the naked qualification to "Check to see if recycling facilities exist in your area" is deemed deceptive because it does not adequately disclose the "limited availability" of programs to support the recyclability claim. This is nearly identical to the language on the Products, which is deceptive for the same reason: it advises consumers simply to "check" rather than informing them of the very limited chance the Products are suitable for municipal use where they live.

51. Without any indication as to why they needed to "check" with their "local facilities" (or even to which "facilities" Defendants refer) Plaintiff did not, and reasonable consumers do not,

understand this language to mean they may not use the Products in most municipalities and thus odds are, they cannot use them in their municipality. A more reasonable interpretation is a consumer need only check locally to find out how to use the bags — not to find out they cannot use them at all —especially given the more prominent statement: "Designed for Municipal Use." This likelihood of consumer confusion is a perfect example of why the FTC declared "Please Check" disclaimers ineffective over twenty years ago. See below, Defendants' Labeling.

52. Glad's website promotes an overall eco-friendly brand image and is riddled with claims that tout the sustainability of its Products in general. On its home page, Defendants immediately direct consumers to learn about Glad's "sustainability journey."



53. Defendants hold themself out on the Glad website and elsewhere as a source of expert information on recycling. Still, among all their "Recycling" tips, nowhere do they advise what recycling experts and most municipalities have been trying to get across to consumers: that they should *not* be bagging recyclables. This is a deliberate choice to put profits over the environment and consumers who care about the environment, as it would reveal why consumers do not need and in fact, should *not* buy "Recycling" bags for municipal use.

54. Instead, Glad has chosen to take advantage of the widespread but incorrect belief that bagged recyclables are OK by inventing a line of Products that adds to the confusion and furthers the very behavior municipalities across the Nation are trying to stop because it is *antithetical* to recycling.

55. One Member of the Board of Directors of the National Recycling Coalition cited Glad "Recycling" bags, in particular, as a reason why the public may be continuing to put recycling in plastic bags, despite requests by recycling collectors not to, herself pleading with Defendants: "@GladProducts please stop confusing consumers!"



56. The brand's focus on eco-consumerism and its purported commitment to sustainability further supports the reasonableness of consumers' belief that the Products' recyclability claims are truthful. See Glad's Sustainability Mission below.



57. Below its "Doing more to waste less" mission, Glad details its "Four Pillars of Sustainability," features articles written by its sustainability "Experts," and gives consumers the opportunity to "listen and learn" with links to podcasts. This wealth of information on

sustainability gives consumers the impression that Glad is educated on and committed to sustainability, and thus lends credence to its sustainability-driven label claims.





**All the Ways to Reduce Waste in Your Home**

How To , Sustainability

58. Additionally, the Products shown below are available for purchase under the website's "Sustainable Solutions" tab. Sustainable Solutions. A "Recycling" bag that is not recyclable anywhere, and that affirmatively impedes recycling in most places, is hardly a "sustainable solution." It is part of the problem. As the Attorney General of Connecticut put it: "Placing recyclables in plastic bags results in those items being thrown away, which is completely counter to what we need to be doing." (See Connecticut AG Tong Press Release, supra)



59. Nowhere on Glad's website do Defendants discuss the number of municipalities that accept, or do not accept, these bags. Defendants do not provide any resource, much less a simple, user-friendly resource—such as a location-based list—that informs consumers where the bags can and cannot be used. And while the website references "applicable municipal programs," nowhere is there a statement indicating such programs are few, limited, or otherwise unlikely to exist for most consumers. As such, the website language is also deceptive under FTC Green Guides and otherwise insufficient to dispel deception (even beyond the fact that the "applicable municipal program" language does not even appear on the Product label or otherwise at the point of

purchase.) (See below, Municipal Programs).



## **CLASS ACTION ALLEGATIONS**

60. **Class Definition:** Plaintiff brings this action on behalf of herself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

National Class: All persons in the United States who purchased the Products during the fullest period of law.

61. In the alternative, Plaintiff brings this action on behalf of the following State Sub-Class:

Florida Sub-Class: All persons in the State of Florida who purchased the Products during the fullest period of law.

62. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

63. **Numerosity and Ascertainability:** Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout Florida and the

United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches.

64. **Typicality and Adequacy:** Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

65. **Commonality:** The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

a. whether Defendant committed the conduct alleged herein;

b. whether Defendants' conduct constitutes the violations of laws alleged herein;

c. whether Defendants' labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

d. whether the Glad Recycle Trash Bags are adulterated and/or misbranded under the Florida Health & Safety Code or federal law;

e. whether Defendants knew or should have known that the representations were false or misleading;

f. whether Defendants knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Glad Recycle Trash Bags;

g. whether Defendants' representations, concealments and non-disclosures concerning the Glad Recycle Trash Bags are likely to deceive the consumer;

h. whether Defendants' representations, concealments and non-disclosures concerning the Glad Recycle Trash Bags violate FDUTPA and/or the common law;

i. whether Defendants should be permanently enjoined from making the claims at issue; and

j. whether Plaintiff and the Class are entitled to restitution and damages.

68. **Predominance and Superiority:** Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the

superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.  given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b.  when Defendants' liability has been adjudicated, claims of all Class members can be determined by the Court;

c.  this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d.  without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct.

69. **Manageability:** The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

**COUNT I**

**For Violations of Florida's Deceptive**

**and Unfair Trade Practices Act,**

**Fla. Stat. 501.201 et seq.**

70. Plaintiff realleges and incorporates by reference each of the allegations contained in paragraphs 9-59 above as if fully set forth herein.

71. Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

72. Defendants violated and continue to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

73. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Glad Recycle Trash Bags were suitable for recycling.

74. Plaintiff and Class members relied upon these advertisements in deciding to purchase the Glad Recycle Trash Bags product.  Plaintiff's reliance was reasonable because of Defendants' reputation as a reliable company.

75. Had Plaintiff known that the Glad Recycle Trash Bags product was not as advertised, she would not have purchased the product. As a result of Defendants' deceptive and unfair acts, Plaintiff and Class members have been damaged.

76. Defendants' conduct offends established public policy, and is immoral, unethical, oppressive, and unscrupulous to consumers.

77. Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

78. Defendants should also be ordered to cease their deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that its Glad Recycle Trash Bags are not suitable for recycling.

## COUNT II

### For False and Misleading Advertising,

### Fla. Stat. § 817.41

79. Plaintiff re-alleges and incorporates by reference the allegations of in the above-referenced paragraphs 9-59 of the Complaint as if fully set forth herein.

80. Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

On their website, in print advertisements, and in other forms of advertisements, Defendants made numerous misrepresentations of material fact regarding the quality of the Glad Recycle Trash Bags product.

81. Defendants knew that these statements were false.

82. Defendants intended for consumers to rely on its false statements for the purpose of selling the Glad Recycle Trash Bags product.

83. Plaintiff and Class members did, in fact, rely upon these statements.   Reliance was reasonable and justified because of Defendants' reputation as a reliable company.

84. As a result of Defendants' misrepresentations, Plaintiff and Class members suffered damages in the amount paid for the Glad Recycle Trash Bags.

85. Plaintiff and Class members are entitled to damages and injunctive relief as set forth above.

## COUNT III

### Unjust Enrichment

86. Plaintiff re-alleges and incorporates by reference the allegations of in the above-referenced paragraphs 9-59 of the Complaint as if fully set forth herein.

87. Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

88. Plaintiff and Class members conferred a benefit on Defendants by purchasing the deceptively advertised Product at an inflated price.

89. Defendants received the monies paid by Plaintiff and Class members and thus knew of the benefit conferred upon them.

90. Defendants accepted and retained the benefit in the amount of the profits they earned from Defendants' Product sales paid by Plaintiff and Class members.

91. Defendants have profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

92. Plaintiff does not have an adequate remedy at law against Defendants.

93. Plaintiff and Class members are entitled to restitution of the amount paid for the Product and disgorgement of the profits Defendants derived from their deceptively advertised Product sales.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

a.      Certify this action as a class action;

b.      Award compensatory, statutory, and punitive damages as to all Counts where such relief is permitted by law;

c.      Enjoin Defendants' conduct and order Defendants to engage in a corrective advertising and labeling/disclosure campaign;

d.      Award equitable monetary relief, including restitution;

e.      Award pre-judgment and post-judgment interest at the legal rate;

f.      Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees, costs, and expenses; and

g.      Award such other and further legal and equitable relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


DATED:  December 26, 2023                                    s/William C. Wright

                                                            WILLIAM WRIGHT
                                                            The Wright Law Office
                                                            FL Bar No. 138861
                                                            515 N. Flagler Drive
                                                            Suite P-300
                                                            West Palm Beach, FL 33410
                                                            Telephone: (561) 514-0904
                                                            willwright@wrightlawoffice.com